IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------

DANIELLE KURIN,

              **JURY TRIAL DEMANDED**

  Plaintiff,

v.               Case No. 7:20-cv-4613

MICHAEL BALTER,

  Defendant.

-------------------------------------------------------------------

## <u>FIRST AMENDED COMPLAINT FOR DEFAMATION AND RELATED TORTS</u>

  Plaintiff Danielle Kurin ("Kurin"), by and through her counsel, for her First Amended Complaint for Defamation and Related Torts against Defendant Michael Balter ("Balter"), respectfully alleges as follows:

## <u>INTRODUCTION</u>

  1.  Defendant Balter owns and operates a blog located at http://michael-balter.blogspot.com/. He also has myriad social media presences.

  2.  Balter proclaims to be a "#MeToo Reporter," sharing stories of alleged sexual harassment and abuse. In reality, Balter is an internet vigilante who exploits actual and purported victims of sexual harassment and abuse in an effort to further his own reputation.

  3.  Balter uses his blog and social media as a bully pulpit to negligently, recklessly, and maliciously publish embellished and often outright false stories about individuals that Balter proclaims have committed various offenses in order to portray himself as a knight in shining armor to protect victims of abuse. He leverages his internet presence with the emotional issues surrounding the #MeToo movement to carry out internet mob justice executions via cancel

culture. Balter's real purpose is not to help victims of abuse, but rather the centering and cultivation of his hero status as a "#MeToo Reporter" and personal fame.

4.      Balter's practices of intimidation and harassment include publishing and amplifying false allegations and doxing or broadcasting the private identifying information such as home addresses and bank records of his targets and their close associates and/or family members.

5.      On his blog, Balter describes himself as "a journalist and journalism professor," yet as detailed in this First Amended Complaint, Balter habitually disregards journalistic standards in favor of publishing embellished and often utterly false stories about individuals in academia and science, two fields that have repeatedly rejected Balter.

6.      Balter is conscious of and even proud of his own fast and loose play with the truth and his disregard for journalistic standards. Indeed, he acknowledged in a 2019 article published by the Columbia Journalism Review that his work does not meet the standards of major publications and that it could create legal liability. *See* Balter, *I Now Publish #MeToo Stories on My Blog, For Free. Here's Why*, C.J.R. (Sept. 4, 2019), https://www.cjr.org/opinion/metoo-academia-sexual-assault-harassment.php (last visited Aug. 3, 2020).

7.      Balter has also admitted that he functions as judge and jury and proclaims individuals' guilt of whatever accusations he has caught wind of whenever he believes allegations are "fully confirmed" by his own investigations. Balter makes such proclamations even in the face of contrary findings by official bodies and despite being told by many who are intimately familiar with his professional work that his investigations and reporting do not comport with accepted journalistic standards. *See* Balter, *Bayer consultant and spouse abuser: Why University of Florida researcher Kevin Folta is not a good choice for "science*

*communicator"* (June 20, 2019, 4:23 PM), http://michael-balter.blogspot.com/2019/06/bayer-consultant-and-spouse-abuser-why.html (last visited July 29, 2020).

8.      Balter has also written on Twitter that he has been unable to obtain libel insurance because of the content of his reporting. *See* Balter (@mbalter), Twitter (Jul. 9, 2020, 4:23 PM), https://twitter.com/mbalter/status/1281338217854377984 (last visited July 29, 2020).

9.      On Balter's blog he has published numerous libelous statements regarding Kurin, an Assistant Professor of Anthropology and Director of the PL Walker Bioarchaeology and Biogeochemistry Laboratory at the University of California, Santa Barbara ("UCSB").

10.      Balter's false and defamatory statements include alleging that Kurin was accused of sexual misconduct, that Kurin covered-up sexual misconduct, and that she was found "guilty" of the same by her employer, UCSB.

11.      Balter has also published false statements that Kurin was married to an individual convicted of raping college students, and that she repeatedly enabled her ex-husband to sexually abuse students.

12.      Balter has republished and made additional false and defamatory statements about Kurin in other forums as well, including on Facebook, Twitter, and on his Amazon.com author profile.

13.      Balter's false and defamatory statements were made negligently, recklessly, and maliciously through the promotion of internet mob justice. Balter intends to make Kurin another victim of cancel culture by preventing her from obtaining tenure at UCSB and destroying her reputation and standing within her professional community in order to further Balter's cultivation of his image as a "#MeToo Reporter" and internet vigilante.

## JURISDICTION AND VENUE

14.     Plaintiff Kurin is an individual who resides in both Santa Barbara, California, and Falls Church, Virginia.

15.     Defendant Balter is a resident of this District who may be served with process at his personal residence in Croton on Hudson, New York.

16.     Kurin and Balter are citizens of different states and the matter in controversy between them exceeds the sum or value of $75,000, exclusive of interest and costs.

17.     Kurin's damages greatly exceed the statutory minimum of $75,000 required to obtain jurisdiction in this matter, the amount of which does not represent the full value of the damages suffered by Kurin.

18.     This Court has jurisdiction of this civil action pursuant to 28 U.S.C. § 1332(a)(1).

19.     Kurin suffered the injuries alleged herein in the State of New York, as well as on a national basis.

20.     Balter published his false and defamatory statements referenced herein from the State of New York by issuing the accusations on the internet with the knowledge and expectation that the same would be republished by the media due to the national interest in the #MeToo movement, and the global interest in anthropology as well as the international nature of Kurin's work.

21.     This Court has personal jurisdiction over Balter, including both specific and general jurisdiction.

22.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1)-(2).

## PLAINTIFF

23.     Plaintiff Kurin serves as Assistant Professor of Anthropology and Director of the

PL Walker Bioarchaeology and Biogeochemistry Laboratory at UCSB.

24.     In 2005, Kurin received her artium baccalaureus with honors in Anthropology

from Bryn Mawr College. In 2008, she earned her Master of Arts in Anthropology from

Vanderbilt University, and in 2012, she completed her doctorate in Anthropology from

Vanderbilt University.

25.     A broadly trained anthropological bioarchaeologist, Kurin has led several

international, multi-disciplinary bioarchaeology field programs in south-central Peru. This work

has been supported by the National Science Foundation, the Fulbright IIE and Fulbright–Hays

programs, Vanderbilt University, and the University of California, among others.

26.     A dedicated, award-winning teacher-scholar fluent in Spanish and conversant in

Quechua, Kurin has authored a book and co-authored more than a dozen scholarly publications

in books and academic journals, and she has supervised hundreds of Peruvian and American

undergraduate and graduate-level research projects. She also dedicates her services as a forensic

anthropologist to the Peruvian Ministry of Justice and California State and Federal authorities in

cases of identifying human remains.

27.     Kurin has often been invited to speak at universities, museums, and other

institutions in the United States and abroad, and she has provided expert opinions to *National

Public Radio*, *TVPeru*, and the *LA Times* regarding research relevant to her field.

28.     UCSB has scheduled Kurin to apply for tenure in September of 2020.

**DEFENDANT**

29.     Defendant Balter is an individual who is now and at all relevant times in this complaint was a resident of Croton on Hudson, New York.

30.     Balter is a self-described archaeology buff and a former adjunct college instructor.

31.     Balter runs his own blog: http://michael-balter.blogspot.com/.

32.     Balter has published stories in a number of magazines and online publications.

33.     In 2005, Balter published a purported archaeology book about the Turkish city of Catalhoyuk. *See* Balter, The Goddess and the Bull: Catalhoyuk--An Archaeological Journey to the Dawn of Civilization (NY Free Press ed. 2005).

34.     There are a handful of moderate reviews of Balter's book, as well as harsh criticisms that rather than focusing on archaeology, Balter instead chose to write about "who [the archeologists] hooked up with and when," as described by Amazon user Maija Jespersen on September 12, 2012.

https://www.amazon.com/GoddessBullCatalhoyukArchaeologicalCivilization/dp/1598740695/ref=cm_cr_arp_d_product_top?ie=UTF8#customerReviews (last visited June 3, 2020).

35.     The same review also describes Balter as "unreasonably critical" of a female archeologist and questions his honesty and the accuracy of his reporting: "He quotes [the female archaeologist] as saying that an arrowhead undeniably represents a female pubis, when in all of her comprehensively illustrated books there is not a single arrowhead. I really doubt his statement is accurate, especially given how he misinterprets her other findings." *Id*.

36.     Another Amazon user, Wulf Barnim, issued a one-star review on November 7, 2006, and commented: "If you love gossip go for it though. You will learn everything about the secret lifes [sic] of archeologists (how they play and mate)." *Id.*

6

37.     The reviews are consistent with Balter's own admission of his voyeuristic tendencies on pp. 135-136 of the 2006 edition of the book that "Since the diaries [of archeologists] were available online for everyone to read, peeking voyeuristically into other peoples' musings soon became a favorite pastime." Balter, The Goddess and the Bull: Catalhoyuk--An Archaeological Journey to the Dawn of Civilization (Left Coast Press ed. 2006).

38.     In 2016, Science Magazine terminated Balter's 25-year career with the publication for misconduct and a "breakdown of trust" after he accused a professor of exaggerated charges of sexual harassment and hounded the accused, his friends, family, and colleagues.

39.     According to Balter's own March 11, 2016 blog, his employer was concerned that Balter's reporting was not sufficiently documented, and that publication of Balter's improperly researched and improperly documented work would create legal liability for the publication. *See* Balter, *Why did @sciencemagazine terminate me after 25 years of service?* (Mar. 11, 2016, 2:31 AM), http://michael-balter.blogspot.com/2016/03/why-did-sciencemagazine-terminate-me.html (last visited July 24, 2020).

40.     Consistent with Balter's voyeuristic obsession of discussing his perceptions of others' sexual habits and behaviors, Balter's blogs contain numerous accusations of sexual harassment and enabling sexual harassment against various people, including administrative staff of universities.

41.     Balter's blog contains a page titled: "A #STEMToo Rogue's Gallery of sexual harassers, predators, and bullies in the sciences [Continually updated]," on which Balter maintains a running list of nearly 40 individuals that he is targeting, with links to any relevant

pages on his own blog. *See* http://michael-balter.blogspot.com/2018/12/sexual-abusers-i-have-known.html (last visited June 11, 2020).

42.     In April of 2019, Balter was forcibly detained by security and then ejected from a Society for American Archeology annual conference after he tried to physically assault an alleged sexual harasser at a conference – and refused to calm down or disengage and behave himself in a civil manner. Balter's explanation: "I considered this an emergency." Kerry Greens, *An Archaeology Meeting Finds Itself in the Middle of #MeTooSTEM* (Apr. 12, 2019), https://www.the-scientist.com/news-opinion/an-archaeology-meeting-finds-itself-in-the-middle-of--metoostem-65737 (last visited June 3, 2020). Balter was banned from the rest of the conference after the administration deemed his conduct inappropriate. *See* Balter, *My correspondence with Society for American Archaeology president Joe Watkins* (April 21, 2019, 7:17 PM), http://michael-balter.blogspot.com/2019/04/my-correspondence-with-society-for.html (last visited July 24, 2020).

43.     In April of 2020, Balter accused Ran Boytner, the executive director of the Institute for Field Research ("IFR") of a massive cover up related to systemic misconduct, something Boytner adamantly denied in a persuasive and credible statement, also published by Balter but decried by him as "lies." *See* Balter, *Field school directors ask why umbrella archaeology group has failed to respond to serious allegations related to sexual assault, coverups, bullying and retaliatory firings [Updated June 9: How grad students were pressured into excavating at IFR field schools.]* (April 25, 2020, 4:20 PM), http://michael-balter.blogspot.com/2020/04/field-school-directors-ask-why-umbrella.html (last visited June 11, 2020) (alteration in original).

44.     On May 20, 2020, Balter published a blog accusing yet another professor – this one in Australia – of being a "sexual predator" and "pedophile protector." *See* Balter, *Peter Rathjen: Serial sexual predator, pedophile protector, and manifestation of all that is rotten at the University of Adelaide? [Update July 20, 2020: Rathjen resigns due to "ill health"]* (May 20, 2020, 9:13 AM) http://michael-balter.blogspot.com/2020/05/peter-rathjen-serial-sexual-predator.html (last visited June 11, 2020) (alteration in original).

45.     Just recently, in May of 2020, the City University of New York terminated Balter from the last job he had—as part time adjunct instructor ironically teaching a single introductory course on the methods and ethics of journalism. *See* Balter, *On not being reappointed: A farewell message to my university department at City College of New York* (May 11, 2020, 9:57 AM), http://michael-balter.blogspot.com/2020/05/on-not-being-reappointed-farewell.html (last visited June 11, 2020).

46.     Balter, in his blog, takes no responsibility for his firing—just like when he was dismissed from his other jobs. Instead he accuses the university of failing to address shortages in funding in part related to COVID-19.

## FACTUAL BACKGROUND

47.     In September 2015, Kurin ran a small independent archeological field program in Peru with her then fiancée, Enmanuel Gomez ("Gomez"), to whom she was briefly married between 2016 and 2019.

48.     An alleged incident occurred after the five days of project work ended, leading one of the participants – who did not actually witness the rumored incident – to make a third-party accusation to UCSB of sexual harassment against Gomez.

49.     Kurin cooperated with UCSB's investigation.

50.     UCSB never charged Kurin with sexual harassment or enabling a sexual harasser, and Gomez was never charged with any crime in either the United States or Peru.

51.     Kurin has never been "found guilty" (or even civilly liable) of anything relating to sexual harassment, assault, or misconduct by any governing body of any kind, anywhere.

52.     During the course of its investigation, UCSB became aware of communications Kurin had with participants who had been on the trip to Peru. UCSB then investigated Kurin's interactions with the individuals.

53.     Between 2016 and 2018, Kurin engaged in the UCSB investigatory and disciplinary process, and utilizing the proper forums available to her as a professor, she amicably settled the matter with UCSB in March 2018. Neither UCSB nor any other entity found Kurin guilty or liable for any misconduct.

54.     In 2016, Kurin and Gomez married.

55.     In 2018, while on leave, Kurin was asked to assist in organizing and managing an IFR field school in Peru, directed by a third party. While there, an incident allegedly occurred involving several Peruvians, including Gomez. Upon discovery, Kurin immediately reported the incident to the appropriate authorities and fully cooperated in the ensuing investigation.

56.     UCSB was completely uninvolved in the second incident. Instead, the IFR conducted an investigation. The IFR substantiated an act of inappropriate behavior against Gomez and at least one other Peruvian. It did not find misconduct against Kurin, but decided to end its relationship with her field program, without prejudice.

57.     Soon after the IFR completed its investigation, Kurin and Gomez separated and Kurin filed for divorce.

58.     Kurin has not communicated substantively with Gomez, save for effecting the divorce proceedings and closing down research projects, for close to two years as of the date of filing of this action.

59.     In September 2019, Kurin returned to UCSB as a full-time assistant professor and has been highly successful.

60.     Kurin has consistently received exceptional teaching evaluations and is consistently among the highest rated professors in the Anthropology Department. She has also been invited to give lectures and to submit articles and books for publication.

61.     In the Spring of 2020, UCSB advised Kurin to prepare materials so she could apply for tenure in September of 2020.

62.     Nevertheless, Balter's lies and misrepresentations have caused Kurin severe harm.

63.     Unfortunately, many of Kurin's students, colleagues, supervisors and administrators – the people directly influencing her career – have been deeply affected by Balter's blogs. As described below, Balter has caused and continues to cause irreparable and severe damage to Kurin's reputation and her career.

64.     But for the severe damage caused by Balter's lies, Kurin is highly regarded at UCSB and she enjoys a very strong reputation as a professor, mentor, and scholar.

**DEFAMATION *PER SE***

65.     Upon Kurin's return to UCSB in 2019, Balter discovered that Kurin had been on leave during and after the UCSB investigation.

66.     Balter submitted a request under the California Public Records Act to UCSB.

67.     Balter also called and emailed numerous professors, students, and administrators – harassing them endlessly and making spurious allegations against Kurin.

68.     A few individuals did speak to Balter, and their hearsay-gossip-opinion-laden remarks are included in his blogs, but they provide few actual facts.

69.     Balter published comments about Kurin in October of 2019 and published his first blog about Kurin on February 28, 2020. *See* Balter, *At UC Santa Barbara and in Peru, an archaeological couple accused of engaging in sexual misconduct and retaliation against victims [[Updated March 6]]* (Feb. 28, 2020, 11:32 AM), http://michael-balter.blogspot.com/2020/02/at-uc-santa-barbara-and-in-peru.html (last visited June 11, 2020) (alteration in original) ("Blog 1"). A true and correct copy of Blog 1 and related comments is attached hereto as **Exhibit 1**.

70.     Blog 1 contains the following false statements of purported fact:

   a.   "an Archeological couple accused of engaging in sexual misconduct." Kurin was not, and never was, accused of sexual misconduct by any governing body on Earth (and Kurin was divorced at the time the blog came out).

   b.   "Kurin's partner" (referring to her ex-husband Gomez). While Kurin was married to Gomez from 2016 to 2019, at the time of the blog, they were divorced. The implication in the publication is that Kurin is still with and protecting Gomez – this is false.

   c.   "Kurin was found guilty…of retaliating against students." Kurin has never been found guilty by any governing body anywhere of anything.

   d.   "The same was true for Kurin's habitual efforts to cover up Gomez's misconduct." Kurin has never made efforts to cover up sexual harassment by Gomez, nor has she ever been charged by any governing body (including UCSB and the IFR) of covering up sexual harassment.

e. "While Kurin eventually declined to cooperate with the Title IX investigation." Kurin cooperated fully with the Title IX investigation until the investigator told her that her opinion and exculpatory evidence was of no interest to them.

f. "Kurin and Gomez are a continuing danger to students" Kurin does not pose a danger to students.

g. "[T]here are already signs that the archeology community is frowning on her [Kurin's] history of enabling sexual misconduct." This statement is false. The archeology community is not "frowning" on Kurin except due to the reputation damage caused by Balter's lies. Kurin has no history of "enabling sexual misconduct." Kurin has never "enable[ed] sexual misconduct" and has never been found liable for doing so, ever. This statement is made with no purpose other than to damage Kurin's professional reputation.

h. Balter repeatedly accuses UCSB of a "cover up" and leaving faculty "in the dark." This is false. UCSB honored a settlement agreement, as did Kurin. Indeed, the investigating body at IFR told Balter it is "thoroughly disappointed with [his] lack of journalistic integrity. You [Balter] are publishing falsehoods." Rather than see reality and truth, Balter published the letter suggesting that IFR is just part of the same massive conspiracy (that does not actually exist).

71.   The same day, Balter also published a link to Blog 1 in the public Facebook group BioAnthropology News:

https://www.facebook.com/groups/BioAnthNews/permalink/10156872951471475/ (last visited June 14, 2020). A true and correct copy of the post is attached hereto as **Exhibit 2**. As of June

13

14, 2020, the group has 25,001 members. Several people commented and responded to Balter's defamatory post.

72.     Balter also repeatedly published links to Blog 1 on his public Facebook profile with more than 880 Facebook friends. Each time, his post was captioned: "At UC Santa Barbara and in Peru, an archaeological couple accused of engaging in sexual misconduct and retaliation against victims." The posts feature Kurin's picture and name. Several people reacted to, commented on, and shared his posts. Attached as **Exhibits 3, 4, and 5** are true and correct copies of three examples of such posts, which republished the defamatory material contained in Blog 1:

a.   https://www.facebook.com/michael.balter.73/posts/10158161887442363 (Feb. 28, 2020, 10:35 AM);

b.   https://www.facebook.com/michael.balter.73/posts/10158168476292363 (Mar. 1, 2020, 10:07 AM); and

c.   https://www.facebook.com/michael.balter.73/posts/10158191803352363 (Mar. 8, 2020, 3:02 PM).

73.     Balter published another blog on March 11, 2020. *See* Balter, *UC Santa Barbara kept misconduct findings against an archaeological couple--a sexual predator and his enabler-- secret from students, faculty, and the scientific community, allowing further episodes of misconduct (including sexual assault) and new victims. Did a leading archaeological institute fail to do due diligence as well? [Updated June 10: UCSB cops out and drops Title IX case against Kurin]*, http://michael-balter.blogspot.com/2020/03/uc-santa-barbara-kept-misconduct.html (Mar. 11, 2020, 4:24 PM), (last visited June 11, 2020) (alteration in original) ("Blog 2"). A true and correct copy of Blog 2 is attached hereto as **Exhibit 6**.

74.     Blog 2 contains the following false statements of purported fact:

a. "an archeological couple – a sexual predator and his enabler – …allowing further episodes of misconduct." The entire title of the blog is false, but these components are false as to Kurin:  1) she is single and not a couple with Gomez; 2) she is not a sexual predator enabler of anyone; and 3) she did not engage in "further episodes of misconduct."

b. "this couple had been found guilty in June 2016 of Title IX offenses by the university." Kurin was never found guilty of anything by UCSB (or anyone else).

c. "Kurin was found guilty of retaliating against students." Kurin was never found guilty of anything by UCSB (or anyone else).

d. A picture of Kurin with the caption: "Sexual predator's enabler?" The question mark does not save Balter – he himself states in the same blog "When I speculate or editorialize, I have made that entirely clear." Kurin is not and never was a "sexual predator's enabler" nor was she ever even accused of such conduct.

e. "Kurin and Gomez were found guilty of Title IX offenses in June 2016." This is patently false.

f. "As we know, in June 2016 both Kurin and Gomez were found guilty of Title IX charges." This is again false.

75.     On the same day, Balter published a link to Blog 2 as a comment to his prior February 28, 2020 post in the public Facebook group BioAnthropology News: https://www.facebook.com/groups/BioAnthNews/permalink/10156872951471475/. The comment is visible in **Exhibit 2 at 3.**

76.     Balter also repeatedly published links to Blog 2 on his public Facebook profile with more than 880 Facebook friends. Several people reacted to, commented on, and shared his

posts. Attached as **Exhibits 7 to 12** are true and correct copies of six examples of such posts, which republished the defamatory material contained in Blog 2:

      a.   https://www.facebook.com/michael.balter.73/posts/10158201130832363 (Mar. 11, 2020, 3:28 PM);

      b.   https://www.facebook.com/michael.balter.73/posts/10158204516972363 (Mar. 12, 2020, 3:42 PM);

      c.   https://www.facebook.com/michael.balter.73/posts/10158213594337363 (Mar. 15, 2020, 10:44 AM);

      d.   https://www.facebook.com/michael.balter.73/posts/10158213051907363 (Mar. 15, 2020, 7:21 AM);

      e.   https://www.facebook.com/michael.balter.73/posts/10158216832142363 (Mar. 16, 2020, 8:31 AM); and

      f.   https://www.facebook.com/michael.balter.73/posts/10158249299712363 (Mar. 24, 2020, 4:40 AM).

77.     On March 17, 2020 at 6:25 PM, Balter also published a link to Blog 2 as a comment to another post on his public Facebook profile: https://www.facebook.com/michael.balter.73/posts/10158222411997363. A true and correct copy is attached hereto as **Exhibit 13**.

78.     Balter published another blog on April 25, 2020, in which he republishes his prior defamatory statements about Kurin. *See* Balter, *Field school directors ask why umbrella archaeology group has failed to respond to serious allegations related to sexual assault, coverups, bullying and retaliatory firings [Updated June 9: How grad students were pressured into excavating at IFR field schools.]* , http://michael-balter.blogspot.com/2020/04/field-school-

directors-ask-why-umbrella.html (Apr. 25, 2020, 4:20 PM), (last visited June 11, 2020)

(alteration in the original) ("Blog 3"). A true and correct copy of Blog 3, including related

comments, is attached hereto as **Exhibit 14**.

79.     In Blog 3, Balter attacks the IFR and accuses it of covering up sexual assaults.

Balter accuses a former IFR board member of having "actively worked to cover up this alleged

misconduct by Boytner, including lying to me and others about what they knew not only about

Boytner's history--but also about a field school director who had been found guilty herself of

retaliating against students (Danielle Kurin of UC Santa Barbara.)" Balter links the words "who

had been found guilty herself of retaliating against students" to Blog 2.

80.     On May 21, 2020 at 3:29 PM, an anonymous poster commenting on Blog 3 wrote

in pertinent part:

> In 2019, Kurin was brought for tenure review, as Balter reported,
> indicating that the above is a fact. I do not know the facts of the
> investigation or its findings. But the Title IX office at UCSB consists
> of professional staff who specialize in Title IX violations. If, after
> 2.5 years of investigation, they decided to return Kurin to her ladder
> faculty post without any stated restrictions, seems to me that
> Boytner assertion that she was exonerated (whether he said that or
> not) is true. I am not sure what the lie is here.

http://michael-balter.blogspot.com/2020/04/field-school-directors-ask-why-

umbrella.html?showComment=1590089357984#c7414929527803796598.

81.     Balter responded to the anonymous commenter the same day at 3:35 PM and

made additional false and defamatory statements about Kurin:

> I'm publishing this last Anonymous comment because nearly every
> statement in it is wrong. But instead of going through it point by
> point, I will identify the most egregious error: I reported earlier on
> the documentation that both Kurin and her partner Gomez had been
> found guilty in the 2016 Title IX proceedings, documentation that I
> was provided by UCSB via the California public records act. So
> Kurin was not exonerated and that is documented.

*Id*. Again, Kurin was never "found guilty" of anything. The comment and Balter's response are included in **Exhibit 14 at 42-44**.

82.     In responding to the anonymous commenter, Balter admits that he actively monitors, reviews, curates, and personally approves and publishes the content submitted as comments on his blog.

83.     At some time in or about October 2019, Balter also published Kurin's name, and later links to Blog 1 and Blog 2, on a page titled "*A #STEMToo Rogue's Gallery of sexual harassers, predators, and bullies in the sciences [Continually updated]*." The URL, https://michael-balter.blogspot.com/2018/12/sexual-abusers-i-have-known.html, labels Kurin as a "sexual abuser." Kurin has never committed an act of sexual abuse, nor is she a sexual harasser, predator, or bully. Such an accusation is false, injurious, and malicious. A true and correct copy of this blog as of June 11, 2020, is included as **Exhibit 15**.

84.     Balter also posts links, including headlines and summaries, to his defamatory blogs on his Amazon.com Author Profile, located at https://www.amazon.com/Michael-Balter/e/B001IQUL0Y%3Fref=dbs_a_mng_rwt_scns_share. A screen shot of Balter's Author Profile, taken on June 11, 2020, showing an excerpt of his republication of Blog 1 and Blog 2 is attached hereto as **Exhibit 16**.

85.     Balter's statements are objectively false and libelous *per se*, and they are made with a knowing and intentional disregard for the truth in furtherance of Balter's efforts to frame and center himself as a "#MeToo Reporter" and to grow his social media following. Merely looking at the actual record and documents cited by Balter himself would reveal that Kurin was never "found guilty" of anything. Such an accusation is false, injurious, and malicious.

86.     Balter's blogs try to thread a conspiracy of malicious administrators of UCSB, IFR, and others that just is not there, and his repeated republications of his defamatory blogs demonstrate that he has no intent other than to harm Kurin and generate publicity for himself.

87.     Balter also targeted Kurin on his Twitter account under the handle @mbalter, with more than 6,000 followers. Balter repeatedly republished his defamatory blogs, proclaimed Kurin's "guilt," and even appealed directly to UCSB to terminate Kurin in an act of tortious interference with Kurin's employment relationship with UCSB. Attached as **Exhibits 17, 18, and 19** are examples of tweets targeting Kurin and her employment relationship illustrating Balter's attempts to make Kurin a victim of cancel culture:

     a.   May 4, 2020, 6:29 AM: "From the Rogue's Gallery of sexual predators: Enmanuel Gomez Choque and Danielle Kurin #Archaeology #MeToo #STEMToo @ucsantabarbara @IFRArchaeology http://michael-balter.blogspot.com/2020/02/at-uc-santa-barbara-and-in-peru.html and http://michael-balter.blogspot.com/2020/03/uc-santa-barbara-kept-misconduct.html." https://twitter.com/mbalter/status/1260894940739129344 (last visited June 11, 2020).

     b.   June 5, 2020, 12:52 PM: "If the #anthropology department at @Harvard can ask sexual predator Gary Burton to resign, then the anthro dept at @ucsantabarbara can ask Danielle Kurin—now on her second Title IX for enabling her sexual predator partner—to resign as well. @Archaeology #MeToo." https://twitter.com/mbalter/status/1268963951481675782 (last visited June 11, 2020).

    c.   June 5, 2020, 2:09 PM: "Both Kurin and Gomez were found guilty in a 2016 Title IX proceeding at @ucsantabarbara. Kurin is now undergoing more Title IX proceedings due to sexual assaults that took place at her 2018 field school, committed by Gomez. #MeToo."

https://twitter.com/mbalter/status/1268983388221984769 (last visited June 11, 2020).

88.    As discussed at length above, these tweets, and others, are full of falsehoods and libelous *per se*. They also evidence Balter's publicly declared specific tortious intent to bring about the termination of Kurin's employment via cancel culture.

89.    Unfortunately, tens, if not hundreds, of thousands, of people have read Balter's falsehoods (as he himself notes in his blogs) – and those people, largely in Kurin's circle, her colleagues, supervisors, and management, have all been turned upside down, gaslighted by the piles of Balter's falsehoods. As a result, and described below, Balter's defamation has severely damaged Kurin's reputation, her career, and her prospects of gaining tenure which, of course, is Balter's goal.

90.    The above-described publications were not privileged. They were published by Balter, purportedly as a journalist on the internet, with the knowledge of their falsity, and with the purpose of generating publicity for himself.

91.    Balter acted with overt malice, hatred, and ill will towards Kurin. Balter's blogs repeatedly demand that Kurin not be granted tenure and that she otherwise be banned from any kind of gainful employment. His whole purpose is to destroy Kurin and generate fame for himself in the process.

92.     On May 11, 2020, the Executive Director of the IFR Board (Ran Boytner) wrote a

letter addressing Balter's comments. The letter was leaked to Balter who published it as an

update to Blog 3, attached hereto as **Exhibit 14**. In the letter, Boytner wrote in part:

> The IFR had been accused of covering up accusations against
> Danielle Kurin. A blogger suggested that Willeke Wendrich, Kevin
> Vaughn and myself should have known about accusations and Title
> IX investigation against her. Here are the facts: Ten days before the
> field school directed by Kurin in Peru for summer 2016 was to
> begin, UCLA legal department contacted the IFR and asked for the
> program to be canceled. Health and safety issues were cited as
> reason and no other information was provided. UCLA went out of
> its way to support the students, and together with the IFR, students
> were either placed at other field schools or received full refunds.
> These included all airfare costs. There was no threat of legal action
> as the above refund policy was implemented immediately.
>
> The blogger then accused the IFR for a cover up of Kurin's
> transactions, although he does not explain why so many people
> engaged in such activity and what was their gain (there are 19
> members at the IFR Board of Governors and Academic Board). He
> wrote that Wendrich "must have known" and therefore did know but
> did not share. Kevin Vaughn – then UCLA Extension Associate
> Dean and the then IFR academic partner – also must have known.
> And I knew just because, well, I am a bad person and bad
> people know bad things. Here are the facts: As the blogger contacted
> the IFR about our relationships with Kurin, Wendrich was appointed
> to act as the IFR spokesperson. She then issued a number of
> statements over the course of a week to the blogger. The blogger did
> not like the statements and became rude and aggressive. On March
> 12 at 4:17pm, Wendrich sent an email to the blogger, writing she is
> no longer interested in interacting with him. By 4:28pm of that day,
> the blogger twitted: "I now have reason to believe that the chair of
> @IFRArchaeology's board of governors, Willeke Wendrich of
> UCLA, is lying about what IFR knew and when it knew it. This
> means the top leadership of the organization is involved in a
> #MeToo coverup." What new information became available to the
> blogger in the 11 minutes between the email and the twit is unclear
> and unstated.
>
> Whether Kevin Vaughn knew about the investigation is irrelevant.
> Vaughn worked at the time for UCLA and his duties were to his
> employer, not IFR. The investigation was confidential, and Vaughn
> was bound by both law and ethics to keep it as such – until told

otherwise. To discuss a confidential investigation with anyone outside UCLA would have exposed Vaughn to serious legal ramification. The blogger suggest that Vaughn should have spread rumors and inform the IFR Board of the investigation that way. Making decisions by rumors is not an advisable way for any organization to take decisions.

There is no explanation why I should have known about the investigation, why I wanted to cover up or what I gained from such behavior. I am, therefore, unable to provide any rational explanation to the blogger's accusation.

During summer 2017, the IFR sent two archaeologists to visit with Kurin's field school at two separate occasions. Their reports and the evaluations of over 35 students were highly positive and the IFR Board decided to continue and to work with Kurin. By 2018, events at the Peru-Wari program caused the IFR to stop working with Kurin and her team.

*Id.*

93.     Commenting on the letter, Balter blatantly disregarded its contents and wrote that Boytner's statement was, "full of lies and distortions." *Id*. The letter, including Balter's response, is included in **Exhibit 14 at 5-10**.

94.     Balter has continued to this day to wax poetic, continuing to accuse Kurin, the IFR, UCSB and others of all kinds of misconduct – all of which is false.

95.     On June 12, 2020, Balter published another blog in which he once more republishes prior false statements and renews his attack on Kurin. *See* Balter, *A UCLA Town Hall on #MeToo and related issues in archaeology leaves more questions than it answers--but confirms that an accused harasser and bully is out of a job. [Updated July 28, 2020: Is Ran Boytner forming a rival field school organization to IFR?]* (June 12, 2020, 1:36 PM), http://michael-balter.blogspot.com/2020/06/a-ucla-town-hall-on-meto-and-related.html (last visited June 14, 2020) (alteration in the original) ("Blog 4"). A true and correct copy of Blog 4 is attached hereto as **Exhibit 20**.

96.     In Blog 4, Balter once more republishes Blog 1 and again defames Kurin: "The dramatis personae have included <u>UCSB archaeologist Danielle Kurin, found guilty in a Title IX proceeding in 2016 of retaliating against students</u> who complained about sexual harassment by her partner" (with the underlined words linking to Blog 1).

97.     On June 13, 2020, Balter added to Blog 4 and bragged about how far the libelous attack on Kurin published on his blog has reached: "I'm very gratified at the attention that this and earlier blog posts about misconduct in archaeology have received. My update on the Danielle Kurin Title IX case has generated some 12,000 page views, since this report was posted there have been about 5000 additional page views." The comment is included in **Exhibit 20 at 7**.

98.     The traffic to Balter's blog is driven by his incessant Twitter attacks, another example of which took place during a series of tweets starting on December 21, 2019 at 11:55 AM. Excerpts include: "@ucsantabarbara really has to stop archaeologist Danielle Kurin from having contact with students. She has retaliated multiple times against students who have complained about sexual harassment and assault her partner." That tweet was liked by 22 people and shared 10 times. As noted above, this entire statement is false. https://twitter.com/mbalter/status/1208445918393065477. A true and correct copy of this chain of tweets is attached hereto as **Exhibit 21**.

99.     On June 10 and 11, 2020, Balter, launched yet another attack on Kurin on with a fresh string of tweets full of defamatory statements directed at Kurin's employer and her professional community. In this attack, Balter repeatedly tags UCSB with the Twitter handle "@ucsantabarbara." Balter falsely states that Kurin is "an enabler of sexual misconduct." He also proclaims that "Kurin is still doing her best to intimidate and threaten students into not speaking about her misconduct." Balter evidences his specific intent to end Kurin's employment, writing:

"The bottom line: If @ucsantabarbara will do nothing about Kurin's persistent misconduct, then it's up to the #anthropology department to settle the matter. Kurin is up for tenure. For the sake of victims past and future, don't let her have it."

https://twitter.com/mbalter/status/1270877430807498758 (last visited June 15, 2020). A true and correct copy of this chain of tweets is attached hereto as **Exhibit 22**.

100.     On or about June 17, 2020, Balter learned of this lawsuit. He responded by posting a blog the same day. *See* Balter, *Archaeologist accused of enabling sexual misconduct and retaliating against students sues #MeToo reporter for $18 million in federal court [Updated July 26, 2020]* (June 17, 2020, 1:58 PM), http://michael-balter.blogspot.com/2020/06/archaeologist-accused-of-enabling.html (last visited Aug. 4, 2020) (alteration in the original) ("Blog 5"). A true and correct copy of Blog 5 and related comments is attached hereto as **Exhibit 23**. In Blog 5, Balter once more republishes Blog 1, Blog 2, Blog 3, and Blog 4. Balter also intentionally makes the following misstatements of purported fact:

    a.   "Archaeologist accused of enabling sexual misconduct." The only person accusing Kurin of enabling sexual misconduct is Balter himself, and more recently the followers that he gained through his defamatory attack on Kurin.

    b.   "Kurin was found guilty in a UCSB Title IX in 2016 of retaliating against students who filed sexual harassment complaints against her partner, Enmanuel Gomez Choque" (with the underlined words linking to Blog 1). Balter makes this allegation despite being on notice of the falsities and inaccuracies of his prior reporting. As noted previously, Kurin was never found guilty of anything, nor is Gomez Kurin's partner as Balter insinuates.

    c.   "Kurin did not cooperate with UCSB's investigation." As noted above, this again misportrays the facts. Kurin cooperated fully with the Title IX investigation until the investigator told her that her opinion and exculpatory evidence was of no interest to them.

    d.   "Kurin claims she has divorced Gomez and 'not communicated substantively' with him for two years. According to my sources, this is a blatant lie, and she continues to associate with him at her field site in Peru." Nothing contained in this statement is fact, other than perhaps the assertion that Balter has "sources" who feed him information, which he did nothing to vet or verify prior to publication.

101.    On June 18, 2020, Balter published yet another blog about Kurin. *See* Balter*, With a litany of lies, a UC Santa Barbara archaeologist seeks to cover up her own misconduct, punish a reporter who revealed it, and intimidate victims and survivors of abuse. [Updated July 11, 2020: Kurin's attorney basically admits, in print, that my reporting was factually correct]* (June 18, 2020, 2:17 PM) http://michael-balter.blogspot.com/2020/06/with-litany-of-lies-uc-santa-barbara.html (last visited July 22, 2020) (alteration in the original) ("Blog 6"). A true and correct copy of Blog 6 and related comments is attached hereto as **Exhibit 24**.

102.    Blog 6 once again republishes the falsities of Blog 1 and Blog 2. In Blog 6, Balter admits that Kurin was not found guilty of anything and defends his use of the word "guilty" in his prior publications, explaining that he used it "in the more common, colloquial sense," despite allegedly having based his reporting on official records which do not declare Kurin "guilty" of anything.

103.    On or about June 28, 2020, an unknown individual submitted a comment to Balter's Blog 6 falsely stating that Gomez was convicted of raping three female students in Peru.

*See* **Exhibit 24 at 17**.  Balter, who curates and approves each and every comment posted on his

blog, published the false statement at 1:49 AM. This false statement is libelous *per se* to Kurin,

as it falsely alleges that she associates with an individual who raped college students, the very

population that Kurin teaches as a college professor.

104.    Later the same day, Balter responded to "Anonymous" and asked the commenter

to contact him and provide more information. *See* id. Balter made no efforts to verify the

accuracy of the false and defamatory statement prior to publishing it on his blog.

105.    At the time of publication, Balter was on notice of the likely falsity of the

statement. Balter knew that Gomez traveled to the U.S. from Peru on a visa, and Balter knew that

Gomez would be denied entry to the U.S. for having committed a crime of moral turpitude if

indeed he was a convicted serial rapist, as Balter published on his blog. Balter himself has

resided abroad and traveled internationally with a visa and is knowledgeable about the

requirements of traveling on a visa, including the restrictions imposed on convicted criminals.

106.    On June 27, 2020, Balter published another blog. *See* Balter, *The Confessions of a*

*#MeToo Reporter [Updated July 10, 2020]* (June 27, 2020, 10:49 AM) http://michael-

balter.blogspot.com/2020/06/the-confessions-of-metoo-reporter.html, (last visited July 10, 2020)

(alterations in the original) ("Blog 7"). A true and correct copy of Blog 7 and related comments

is attached hereto as **Exhibit 25**.

107.    In Blog 7, Balter again makes a misstatement of fact, falsely stating that Kurin

was on paid leave from UCSB for three years. In truth, Kurin was placed on unpaid leave for

well over a year. Balter makes this false statement regarding paid leave in furtherance of his

ridiculous conspiracy allegations against Kurin, UCSB, and the IFR. This statement also serves

as further objective proof of Balter's poor reporting and lack of investigative skills which do not comport with journalistic standards.

108.    On June 29, 2020, Balter published another blog. *See* Balter, *Andean Archaeology Has a #MeToo Problem [Updated July 4]* (June 29, 2020, 6:38 PM), http://michael-balter.blogspot.com/2020/06/andean-archaeology-has-metoo-problem.html (last visited July 10, 2020) (alteration in the original) ("Blog 8"). A true and correct copy of Blog 8 is attached hereto as **Exhibit 26**.  In Blog 8, Balter republishes Blog 1, Blog 2, Blog 4, and Blog 6 and their numerous false and defamatory statements.

109.    In Blog 8 Balter also describes Gomez, who Balter previously published was convicted of drugging and raping students, as being Kurin's "partner and later husband." Balter makes no effort to clarify that Kurin had no relationship to Gomez at the time of Balter's reporting or at present day. Instead, Balter deliberately paints the picture that Kurin and Gomez are still together in order to besmirch Kurin's reputation and embellish Balter's false narrative.

110.    In a comment to Blog 8 time stamped on July 4, 2020 at 6:53 AM, Balter writes "I did delete 2-3 comments that I had originally approved … I felt that another scholar had been unnecessarily and unfairly disparaged, including their academic integrity, and so I decided after the fact to delete those posts." *See* **Exhibit 26 at 35**. In this comment Balter once again confirms that he actively monitors, reviews, curates, and personally approves and publishes the content submitted as comments on his blog.

111.    On July 22, 2020, Balter published another blog. *See* Balter, *Of divorce, deception, and defamation: Did UC Santa Barbara archaeologist Danielle Kurin tell the truth? [Updated July 29, 2020]* (July 22, 2020, 2:53 AM) http://michael-balter.blogspot.com/2020/07/of-divorce-deception-and-defamation-did.html (last visited Aug. 4,

2020) (alteration in the original) ("Blog 9"). A true and correct copy of Blog 9 is attached hereto as **Exhibit 27**. In Blog 9, Balter once more republishes his earlier defamatory blog posts.

112.    In Blog 9, Balter discusses obtaining Kurin's divorce records, which he scrutinizes in an effort to more closely associate Kurin with her ex-husband, Gomez, who Balter falsely published was convicted of raping and drugging students.

113.    Balter salaciously writes that he has witnesses who saw Kurin sleeping in Gomez's bedroom during the pendency of their divorce and Balter attempts to falsely portray an ongoing sexual relationship between Kurin and Gomez in order to suggest that Kurin is not suitable for tenure. In reality, Kurin had stayed at Gomez's family home briefly while tending to matters related to their divorce and closing down research projects. The "bedroom" that Balter puts Kurin in with Gomez is a sparse adobe and concrete residential unit, where men, women, and children of different generations bed down. Balter allowed his voyeuristic tendencies to once again get the best of him as he published yet more false and defamatory allegations against Kurin.

114.    In Blog 9, Balter also falsely claims that while on official field expeditions in Peru, Kurin "hid away in her room most of the time smoking weed." Balter also accuses Kurin of plying and placating students with drugs.  Balter's statements are false and libelous *per se*.

115.    Balter's attacks in Blog 9 are expanded from Kurin's archaeological work in Peru to include false allegations that she and her counsel are "attempting to intimidate witnesses and tamper with their potential testimony" in this matter. These allegations are false and libelous *per se* as to Kurin and her counsel. Further, were Balter not a *pro se* litigant, these comments would likely constitute a violation of N.Y. Rules of Pro. Conduct, Rule 3.6(b)(1) regarding the credibility of witnesses.

116.    On July 29, 2020 at 6:04 PM, Balter published anonymous comment on Blog 9 again falsely proclaiming that Gomez was convicted of raping an archaeology student. A copy of the comment is visible in **Exhibit 27 at 30** (the comment is in Spanish). Balter published this statement knowing its falsity. Balter's intent in publishing the statement on his blog was to harm Kurin's reputation, and to convince Kurin's employer to take adverse actions against her by attempting to demonstrate that she closely associates with a convicted rapist, none of which is true.

117.    On July 26, 2020, Balter published another blog. *See* Balter, *UC Santa Barbara turns back a wave of Title IX complaints against archaeologist Danielle Kurin on jurisdictional grounds* (July 26, 2020, 3:57 PM), http://michael-balter.blogspot.com/2020/07/uc-santa-barbara-turns-back-wave-of.html (last visited July 31, 2020) ("Blog 10"). A true and correct copy of Blog 10 is attached hereto as **Exhibit 28**. As with prior blogs, Balter once more republishes his earlier defamatory blog posts.

118.    In Blog 10, Balter proclaims to quote a former student writing: "I have…expressed my utmost concern about Kurin continuing to use her position to lure unsuspecting students to Peru with her and her husband...Kurin and Emanuel are predators" (alteration in original). **Exhibit 28 at 2**. Again, Balter attempts to mislead his audience by portraying Kurin as being presently married to Gomez, who Balter repeatedly falsely proclaims to be a serial rapist and further accusing Kurin falsely of being a "predator."

119.    On July 29, 2020, Balter published another blog. *See* Balter, *Student sexually assaulted by then-husband of University of California, Santa Barbara archaeologist Danielle Kurin writes to Chancellor about the university's failure to help her [Updated July 31, 2020]* (July 29, 2020, 8:56 PM), http://michael-balter.blogspot.com/2020/07/student-sexually-

29

assaulted-by-then.html (last visited Aug. 4, 2020) (alteration in the original) ("Blog 11"). A true and correct copy of Blog 9 is attached hereto as **Exhibit 29**. As with prior blogs, Balter once more republishes his earlier defamatory blog posts.

120.    In Blog 11, Balter proclaims to publish a copy of a letter from a student to UCSB. In the letter, the student repeats several of Balter's false and defamatory statements. Balter, knowing full well the falsity of the statements, republishes them in full on his blog including:

      a.    "[S]he has already been involved in a 2016 Title IX case in which she was found guilty." As noted repeatedly, Kurin has been found guilty of nothing.

      b.    "I was told that Kurin would face no repercussions for the part she played in my assault and the general misconduct she engaged in." Kurin played no role in any assault, actual or alleged.

121.    Balter also publishes the address and email address for the UCSB chancellor prefaced with "For those who want to write to Chancellor Yang." Balter once again intentionally published knowingly false information and is now soliciting people to harass Kurin's employer in attempt to tortiously interfere with Kurin's employment to make her a victim of cancel culture.

122.    On July 30, 2020 at 10:24 PM, Balter published an anonymous comment on Blog 11 that states in pertinent part: "I echo those who've said that Kurin is a danger to students. She should not get tenure at UCSB and indeed should never be put in a position where she is responsible for students' welfare ever again." **Exhibit 29 at 5**. Once more Balter is using his false and defamatory statements to attack Kurin's employment relationship with UCSB.

123.    In addition to his numerous defamatory attacks on Kurin on his blog, Balter has been quite busy on Twitter, repeating ad nauseum his false prior statements and unleashing a fusillade of attacks on Kurin and her counsel, including false and baseless allegations of witness

intimidation in an effort to sway the jury pool and creating a substantial likelihood of a materially prejudicial effect on this matter in violation of N.Y. Rules of Pro. Conduct, Rule 3.6(b)(1) regarding trial publicity and the credibility of witnesses.

## DAMAGES

124.    Balter himself admits he is out to destroy Kurin, and indeed he brags about how many people have seen his false allegations against Kurin.

125.    In Blog 1, Balter suggests that Kurin does not deserve tenure (without tenure, Kurin's contract at UCSB would be terminated).

126.    Also in his Blog 1 Balter acknowledges that Stanford University retracted an invitation for Kurin to give a lecture – because of Balter's false accusations.

127.    Balter's falsehoods have been repeated by others in various public sources, e.g.: u/verve51, Reddit (Mar. 1, 2020, 3:18:17 GMT), https://www.reddit.com/r/UCSantaBarbara/comments/fbyzse/pls_read_and_be_aware_professor_who_was_put_on/ (last visited Aug. 3, 2020). This particular post garnered 38 comments and 261 "up votes" as of Aug. 3, 2020.

128.    In January of 2020, Kurin nominated a potential Ph.D. grad student to the UCSB program. The student was excited, as she was to be awarded a very generous package of support while working toward her Ph.D. and had come to the UCSB campus for a visit. Somehow, during that visit, Balter learned of private, Personally Identifiable Information about this prospective student, and then contacted and hounded her via email, wrote numerous lies about Kurin to her, and coerced her into withdrawing her candidacy.

129.    In March of 2020, under the guise of "investigating," Balter sent a defamatory email to Kurin's entire department, specifically asking if they knew that Kurin "had been found

guilty of retaliation and harassment." This statement is a lie couched in a question – designed for no reason other than to destroy Dr. Kurin's professional reputation with her colleagues.

130.  Kurin received outstanding reviews from students in her April 2020 teaching evaluations, tainted only by Balter – e.g. "I love professor Kurin a lot! She's fantastic and wonderful and she has inspired me so much. Because of this I was deeply crushed when I learned of her title IX violations. I hope that this issue is addressed so I don't feel sick and like crying in her class."

131.  The student that wrote the above review was reacting to false information she read on Balter's blog and/or twitter. This accusation comes directly and only from Balter's defamatory publications.

132.  Kurin's speaking engagements have been revoked at Stanford University and the University of California, Los Angeles because – according to the university organizers – "of the publicity."

133.  Kurin has also been contacted by former friends and colleagues with whom she lost touch, who have read Balter's attacks and false words and expressed their sympathy for her plight, indicating just how far Balter's defamation campaign has reached.

134.  Numerous students and professors have approached Kurin to learn her side of the allegations. Kurin tried to take the high road and ignore Balter – which she has done until now (contrary to Balter's accusation that Kurin and UCSB are in some bizarre cover up conspiracy along with apparently the IFR and most of the UCSB administration). However, Kurin is up for tenure and has no choice but to defend her honor and reputation and expose Balter's lie-filled blogs and writings.

135.    As a proximate result of the above-described publications, Kurin has suffered loss of her reputation, shame, mortification, and injury to herself and her person, in a total amount to be established by proof at trial, but at least $18 million dollars.

136.    Balter has acted with overt malice. His only goal seems to be to destroy Kurin, to ruin her, and to get her fired by preventing her from attaining tenure, in an effort to further his own internet and social media fame and center himself as a #MeToo vigilante.

137.    Because of Balter's malice in repeatedly publishing his defamatory statements and specifically targeting Kurin's employer, colleagues, and students, and family, Kurin also requests that the Court award punitive damages.

## COUNT I – LIBEL *PER SE*

138.    Plaintiff Kurin hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

139.    Balter defamed Kurin by, *inter alia*, publishing that Kurin was accused of sexual misconduct, that Kurin covered up sexual misconduct, that Kurin was found "guilty" of the same by her employer, that she was married to a convicted rapist who drugged and raped archaeology students and that she enabled and engaged in predatory activities with this rapist, that she continues to associate with and occasionally cohabitates with a convicted rapist, and that she is a current and continuing danger to students.

140.    Balter's statements were false, and Balter made the statements knowing their falsity. Indeed, the very documents that Balter purports to rely upon contradict his assertions. Moreover, several individuals have contradicted Balter's statements, and Balter responded simply by calling them liars and alleging an outlandish conspiracy.

141.    Balter can assert no privilege in making his false statements.

142.    Balter acted with actual malice as demonstrated by repeatedly publishing his false statements on various websites including his blog, Facebook, and Twitter. Balter deliberately targeted Kurin's colleagues, coworkers, students, employer, and others, with the intent of garnering a large and influential audience in order to inflict the maximum harm upon Kurin. Indeed, Balter even tweeted repeatedly at Kurin's employer and expressly called for Kurin's employer to take adverse actions against her based upon his false statements in a cancel culture attack.

143.    Balter also specifically targeted Kurin's employment and professional reputation with numerous emails and other communications that he directed to Kurin's current and former students, coworkers, colleagues, and others, and, further by publishing the contact information for Kurin's employer alongside false allegations of misconduct.

144.    Tens, if not hundreds, of thousands of people have seen and continue to see Balter's libelous statements.

145.    As a direct and proximate result of the false and libelous articles published by Balter, Kurin has suffered and will continue to suffer public hatred, contempt, scorn, and ridicule.

146.    As set forth above, the false and defamatory statements published by Balter are libelous *per se* in that they accuse Kurin of having committed a crime and of being unfit to practice in her profession. Moreover, Balter's acts have caused Kurin actual harm in an amount that exceeds $75,000.

147.    The above-detailed actions of Balter were undertaken not just to harm Kurin, but were part of a pattern of similar conduct aimed at dozens of individuals and institutions in academia and the scientific community in order to damage an industry that has repeatedly

rejected Balter because of his outrageous, irresponsible, irrational, and otherwise harmful behavior.

## COUNT II – SLANDER *PER SE*

148.    Plaintiff Kurin hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

149.    Based upon information and belief, Balter slandered Kurin by repeatedly calling Kurin's current and former students, coworkers, colleagues, and others, and stating that, *inter alia*, Kurin was accused of sexual misconduct, that Kurin covered-up sexual misconduct and retaliated against students, that Kurin was found "guilty" of the same by her employer, and that she is a danger to students.

150.    Balter's statements were false, and Balter made the statements knowing their falsity, and/or with a reckless disregard for the truth.

151.    Balter can assert no privilege in making his false statements.

152.    Balter acted with actual malice as demonstrated by his dogged persistence in repeatedly calling individuals related to Kurin's employment and professional community, over and over again, in order to ensure that he was able to deliver his defamatory message and damage Kurin.

153.    As a direct result and proximate result of the false and slanderous statements made by Balter, Kurin has suffered hatred, contempt, scorn, and ridicule.

154.    As set forth above, the statements made by Balter are slanderous *per se* in that they accuse Kurin of having committed a crime, associating with a felon, and being unfit to practice in her profession. Moreover, Balter's acts have caused Kurin actual harm in an amount that exceeds $75,000.

155.    The above-detailed actions of Balter were undertaken not just to harm Kurin, but were part of pattern of similar conduct aimed at dozens of individuals and institutions in academia and the scientific community in order to damage an industry that has repeatedly rejected Balter because of his outrageous and harmful behavior.

<u>**COUNT III - INTERFERENCE WITH CONTRACT AND
PROSPECTIVE ECONOMIC ADVANTAGE**</u>

156.    Plaintiff Kurin hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

157.    Kurin had agreements with Stanford University and UCLA to perform speaking engagements relating to her anthropological work in Peru.

158.    These speaking engagements presented invaluable opportunities for professional advancement and networking, provided free travel and lodging, and added additional accomplishments for Kurin's curriculum vitae and application for tenure.

159.    Based upon information and belief, Balter was aware of Kurin's speaking engagements.

160.    Balter repeatedly published numerous false and defamatory statements about Kurin in various online forums, including a Facebook group called BioAnthropology News, which has 25,001 members (as of June 14, 2020) who work in, or are involved with, Kurin's industry.

161.    Balter also repeatedly called, emailed, or otherwise contacted Kurin's current and former students, coworkers, and colleagues, with the intent to malign Kurin's professional and personal reputation by sharing false and defamatory information.

162.    Balter publicly called upon Kurin's employer to take adverse actions against her based on his false and defamatory allegations, thus suggesting to others in her industry that she should be unwelcome and is unfit to perform her profession.

163.    Balter acted with actual malice and specifically targeted Kurin's employment and professional and contractual relationships.

164.    Balter's wrongful acts were the actual and proximate cause of Stanford and UCLA cancelling their agreements for Kurin to perform speaking engagements.

165.    As set forth above, Balter improperly interfered with Kurin's contracts and prospective economic advantage. Moreover, Balter's acts have caused Kurin actual harm in an amount that exceeds $75,000.

166.    The above-detailed actions of Balter were undertaken not just to harm Kurin, but were part of pattern of similar conduct aimed at dozens of individuals and institutions in academia and the scientific community in order to damage an industry that has repeatedly rejected Balter because of his outrageous and harmful behavior.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kurin prays that the Court enter judgment in her favor and against Defendant Balter for the following relief:

(a) Compensatory damages in an amount not less than $18 million, along with prejudgment interest;

(b) Punitive damages in an amount as the Court may see fit to penalize Balter and to deter Balter and others from repeating his unlawful conduct;

(c) An order directing Balter to remove the defamatory publications and to publish retractions;

(d) Injunctive relief requiring Balter to cease and desist from continuing the aforementioned

false and defamatory actions against Kurin;

(e) An award of Kurin's reasonable attorneys' costs and fees; and

(f) Such other relief as the Court may deem just and proper.

## **<u>JURY DEMAND</u>**

Kurin hereby demands a trial by jury on all issues so triable.


Dated: August 4, 2020                           */s/ David Scher*_____
Washington, D.C.                                David Scher
                                                Hoyer Law Group, LLC
                                                1300 I St. NE, Ste. 400E
                                                Washington, D.C. 20005
                                                Telephone: (202)-997-8227
                                                Email: dave@hoyerlawgroup.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 4, 2020, the foregoing document was electronically filed

with the Court using the CM/ECF Filing System, which will send a Notice of Electronic Filing to

all parties of record who are registered with CM/ECF. Additionally, copies were sent via USPS

First Class Mail and email to:

> Michael Balter
> 148 Old Post Road South
> Croton on Hudson, NY 10520
> michael.balter@gmail.com

> */s/ David Scher*_____
> David Scher