# BakerHostetler

Baker & Hostetler LLP

Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5403

T 202.861.1500
F 202.861.1783
www.bakerlaw.com

Mark I. Bailen
direct dial: 202.861.1715
MBailen@bakerlaw.com

January 5, 2021

**VIA ECF**

The Honorable Vincent L. Briccetti
United States District Court for the Southern District of New York
300 Quarropas Street, Room 630
White Plains, NY 10601

    Re:    *Kurin v. Balter*, 7:20-cv-4613 Pre-Motion Conference Request - Summary Judgment

Dear Judge Briccetti:

We are counsel to defendant Michael Balter, a science journalist for over 43 years who has published groundbreaking reports on the "#MeToo" movement in academia, including a series of blog posts that documented plaintiff's wrongdoing as an archeologist and university professor. We are writing to request a pre-motion conference to file a motion for summary judgment. Even though discovery is in its early stages, adjudication is timely because (1) newly enacted modifications to the New York anti-SLAPP law contemplate swift resolution of cases like the instant matter which improperly chill speech on matters of public concern; and (2) no further discovery is necessary because the undisputed evidence in the record, including a 2016 Title IX report (cited in plaintiff's First Amended Complaint ("FAC")), establishes as a matter of law that plaintiff cannot prevail on her libel, slander and related claims against Mr. Balter.

Mr. Balter began his research and reporting on plaintiff's misconduct in fall 2019 when he was contacted by a source. The source relayed concerns about plaintiff's return to the University of California, Santa Barbara ("UCSB") after a UCSB-mandated three-year disciplinary leave in the wake of significant Title IX findings that plaintiff had retaliated against students who alleged sexual misconduct by her partner and later husband, Enmanuel Gomez. The FAC misleadingly minimizes the Title IX report and includes scores of false and irrelevant allegations denigrating Mr. Balter. Mr. Balter stands by his reporting, which has been corroborated by additional witnesses who have come forward over the past year.

### *This Proceeding is a "SLAPP" Case*

Plaintiff's effort to silence Mr. Balter and chill his First Amendment rights through this lawsuit is precisely the type of conduct that "anti-SLAPP" statutes are designed to address. Just two months ago, New York enacted modifications to its anti-SLAPP law to broaden protections of speech and to safeguard the kind of reporting and publications at issue here: "communications in

The Honorable Vincent L. Briccetti
January 5, 2021
Page 2

a . . . public forum in connection with an issue of public interest."[1] "Public interest" is "broadly construed" and includes "any subject other than a purely private matter." As Gov. Cuomo explained, the statute "protects New Yorkers' fundamental right to free speech without fear of harassment or bullying" because "[f]or too long, powerful and wealthy interests have used frivolous lawsuits to harass and intimidate critics by burdening them with exorbitant legal fees and time consuming legal processes. That ends now."[2]

Under the Act, a party may file a motion to dismiss with affidavits – *i.e.*, summary judgment– challenging claims or establishing defenses. Judge Jed Rakoff recently ruled in *Palin v. New York Times Co.*, a defamation case, "that a federal court sitting in diversity must apply [the New York anti-SLAPP law] because it is a substantive, rather than a procedural, provision."[3] As a New York resident, Mr. Balter seeks to avail himself of his rights under the statute through this motion. The motion is timely because the documentary evidence conclusively demonstrates that plaintiff does not have viable claims and will not be able to establish any through discovery.

### *No Viable Claims*

The crux of plaintiff's case is that Mr. Balter accused her of being found "guilty" of misconduct – i.e. retaliation against students who reported sexual harassment by her then-partner and later husband to UCSB. Plaintiff claims that, although many students complained of misconduct by her and her now ex-husband at a field study program in Peru that she supervised in the summer of 2015, she has been "found guilty of nothing." *See, e.g.,* FAC ¶ 120. The Title IX report, however – issued by "a neutral, fact-finding University office of record tasked with responding to Title IX and discrimination complaints" – expressly concluded in its 50-page report that the "substance of the alleged conduct … more likely than not *did occur*." The claims of retaliation by plaintiff and sexual harassment by her ex-husband "were found to be substantiated" and "policy violations [were] presented by these two claims."[4]

It is also undisputed that the Institute for Field Research ("IFR") terminated plaintiff's role as the director of a field school after similar complaints were made and IFR "substantiate[d] that inappropriate behavior occurred" during the summer of 2018 under her watch. IFR stated that "[s]uch conduct violates IFR policy and standards of conduct [and] [t]he IFR will no longer work with Dr. Danielle Kurin, the director of the field school."[5]

Based on this undisputed evidence alone, summary judgment is warranted for Mr. Balter on all three claims for relief. Plaintiff cannot establish libel or slander and her interference with contract claim is dependent entirely on viable actions for libel or slander.

---

[1] N.Y. Civ. Rights Law § 76-a.
[2] *New Law Deters Abusive "Strategic Lawsuits Against Public Participation" - Known as SLAPP Lawsuits*, Gov. Cuomo's Press Office, https://www.governor.ny.gov/news/governor-cuomo-signs-legislation-stop-frivolous-lawsuits-meant-intimidate-bully-or-suppress (last accessed on Jan 4, 2021).
[3] No. 17-CV-4853 (JSR), 2020 WL 7711593, at *3 (S.D.N.Y. Dec. 29, 2020). Judge Rakoff also ruled that the statute applies retroactively in a pending action.
[4] UCSB Title IX Report on Professor Kurin and Enmanuel Gomez, June 14, 2016.
[5] Email from Ran Boynter, Executive Director of IFR, Oct. 17, 2018.

The Honorable Vincent L. Briccetti
January 5, 2021
Page 3

***First***, Mr. Balter's reporting of the findings of the Title IX report by a state university is protected by the fair report privilege. His colloquial use of the term "guilty" to characterize findings of misconduct in the report is a fair and accurate summary of the report, and therefore privileged. Plaintiff herself, in a Facebook post to her friends and colleagues, used that precise language years before in describing the Title IX finding: after berating students who reported misconduct by her, her ex-husband, and others, she wrote that the "Title IX office and upper administration at UCSB took these ad hominem racist accusations and innuendo at face value, *essentially finding us guilty*." This admission constitutes "consent," a complete defense.[6]

***Second***, other statements that plaintiff challenges – such as that she "enabled" her husband to engage in sexual misconduct – are protected commentary and opinion that flows from the disclosed, undisputed facts of the Title IX finding and her termination by IFR. ***Third***, any assertions of fact in Mr. Balter's reports are substantially true. For instance, plaintiff complains that he fails to accurately describe her relationship with Mr. Gomez, whom she divorced in December 2019, claiming it falsely conveys the impression that she is supportive of him. But she married Gomez in 2016, *after* he was accused of sexual harassment in 2015 and just before UCSB substantiated the charges. Plaintiff cannot show material falsity, even if Mr. Balter may have imprecisely described the relationship's status at a given time (*e.g.* partner, fiancé, husband, ex-husband). ***Fourth***, plaintiff has not alleged "clear and convincing" evidence of actual malice (knowledge of falsity or reckless disregard of the truth), nor is there any evidence that Mr. Balter published his blog posts with actual malice.[7] Her actual malice allegations solely relate to *where* he published the blog post (*e.g.* on websites, Facebook and Twitter) and *whom* he addressed (her colleagues and others) to "inflict . . . harm upon Kurin." FAC ¶142. But that is not evidence of actual malice, which concerns a defendant's state of mind as to the falsity of the publication.[8]

Because the evidence does not support her claims, plaintiff has resorted to "shooting the messenger" by aggressively attacking Mr. Balter's bona fides as a journalist, leaking documents produced in discovery to malign him on social media, and poisoning his standing in professional organizations. Mr. Balter is entitled to avail himself of the recent amendments to New York law to combat just this type of "SLAPP suit" and summary judgment is the proper vehicle to obtain this relief.

Sincerely,

Mark I. Bailen

---

[6] *See, e.g.*, *Forte v. Jones*, No. 2013 WL 1164929, at *5 (E.D. Cal. Mar. 20, 2013) ("defamatory statement must be published by the person allegedly committing the defamation *before* the person who is defamed publishes the statement h[er]self thereby conferring on anyone and everyone else the absolute privilege of consent").

[7] Actual malice applies in this case under the anti-SLAPP law (N.Y. Civil Rights Law § 76-a(2) (in matters of public concern, like here, plaintiff must establish "by clear and convincing evidence that any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of whether it was false.")) and because plaintiff is a limited purpose public figure.

[8] Given the breadth of irrelevant material in the FAC, the motion may require subsidiary arguments such as lack of defamatory meaning, not "of and concerning" plaintiff, or statements by others which are privileged or immune.

The Honorable Vincent L. Briccetti
January 5, 2021
Page 4


cc: David Scher, Esq., Counsel for Plaintiff